EXHIBIT 1

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CRIMINAL No. 17-CR-10320-NMG |
| ) | |
| ALEX FRAGA, ) | |
| Defendant.  ) | |
| ) | |

## AFFIDAVIT OF ATTORNEY STEPHEN NEYMAN

I, Stephen Neyman, being duly licensed in the Commonwealth of Massachusetts, hereby depose and state the following:

1. I represented the defendant in the above-captioned matter.

2. I was retained on this case on either August 18th or August 19th, 2017.

3. I believe I first appeared in court on this matter on August 21, 2017 for the preliminary hearing and detention hearing.

4. I was provided with wiretap affidavits in the morning of the 21st, a few hours prior to that hearing referenced in the preceding paragraph.

5. I reviewed those as much as possible with Mr. Fraga in the lockup. Attorney Francis O'Brien was at this meeting representing Mr. Fraga's brother, Kevin Fraga. The four of us reviewed as much of these documents as possible in the limited time we had. We had to return these documents to the Assistant United States Attorney at the time of the hearing. To the best of my recollection these were subject to a protective order. I was told that they would be produced later pursuant to the automatic discovery rules.

6. I was later provided with a summary of the drug weights chart providing detailed attribution to my client.

7. I requested Jencks materials from the government on August 18, 2017 and was told that no Jencks materials existed.

8. I never independently investigated the non-fatal drug overdoses of Tiarrah Geggatt and Dean Viprino. I was provided with some detail of this by either the agents or the Assistant United States Attorney at a very early date (I believe I was

      shown something during one of the proffer sessions but I am not entirely sure when this was or what it was)

9. I did some research on the twenty year mandatory that Mr. Fraga was facing if indicted. My focus was the "substantial risk of death" prong of the serious bodily injury enhancement. I discussed this with Mr. Fraga and highlighted the risk that he would be taking if he took this case to trial. I based that on the number of drug related conversations that were recorded implicating him in dealing and the information provided about the Geggatt and Viprino overdoses. I have no specific recollection of discussing with Mr. Fraga the government's burden of proof beyond a reasonable doubt as it particularly related to those overdoses. To the best of my recollection I did discuss with him prior to the plea the government's general burden of proof beyond a reasonable doubt all elements of the charges in the indictments. I do this as a matter of course and constitutional obligation in all cases.

10. I made clear to Mr. Fraga that the safest way to avoid the twenty year mandatory was to plead guilty to the information and waive indictment. It was my understanding that if the case were to be indicted the government would charge the twenty year mandatory.

11. I told Mr. Fraga that the sentencing guidelines as calculated for him, his brother and Mr. Ramirez did not properly reflect the grossly disparate conduct among the three charged participants and that I would bring that to the judge's attention at the sentencing hearing.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 1ST DAY OF JULY, 2020.

_____
Stephen Neyman